[S. F. No. 7530.   Department Two.—December 18, 1917.]

SARAH E. HARRINGTON, Appellant, v. HENRY W. TAYLOR et al., as Trustees, etc., Respondents.

[S. F. No. 8057.   Department Two.—December 18, 1917.]

SARAH E. HARRINGTON, Appellant and Respondent, v. HENRY W. TAYLOR et al., Trustees, etc., Appellants and Respondents.

TRUST—TRUST DEEDS FOR BENEFIT OF SPECIFIED CREDITORS—SEPARATE TRUST INSTRUMENTS — CONSTRUCTION — DIVISION OF PROCEEDS.— Where four brothers owning, as tenants in common, lands in Los Angeles and San Francisco, and having creditors, some of whom were creditors of the four brothers and others were creditors of individual brothers only, made a trust agreement followed by four separate trust deeds to the same trustees, each deed containing a list of the creditors of the brother executing it, and declaring the priorities of the liens of the listed creditors upon one or another, and, in some instances, on both the real properties mentioned, and requiring the trustees, in the event of certain defaults, to sell the properties and divide the proceeds to the extinguishment of the debts, requiring the trustees to sell the Los Angeles properties first, but, if necessary, to sell both the Los Angeles and San Francisco properties, and out of the gross proceeds of each sale to pay the charges pertaining to the property sold, the net remainder to be divided into four portions out of which the four sets of trustees were to pay off the several sets of lien creditors in the order and rank provided in the deeds, and the trustees, becoming obliged to sell under their trust, sold the Los Angeles property first and out of the net proceeds extinguished the indebtedness of the trustors according to the declared priority, and then sold the San Francisco property and made like disposition of the proceeds, the interpretation by the trial court of the trust deed that, under its terms, it became the duty of the trustees to prorate the proceeds from each parcel of land sold was erroneous, no such duty being imposed upon the trustees by the terms of the trust, which fairly contemplated that the Los Angeles property might be sold alone if its sale would extinguish the trustor's indebtedness, and that the proceeds should be used to extinguish the lien claims in the order of their priorities.

ID.—MARSHALING ASSETS—RIGHT OF MARSHALING, WHEN INAPPLICABLE.— The right to marshal assets is a mere equity, which may never be invoked when its operation will accomplish inequity, and a lien

claimant may invoke this equitable principle only when it will bene-
fit him without injuring others.

ID.—TIME WHEN PRINCIPLE OF MARSHALING ASSETS MUST BE INVOKED.—
Equity will apply the doctrine of the marshaling of assets to those
conditions only which exist at the time when it is invoked, and will
not apply it when no demand was made upon trustees to apply it
until long after the sales of securities by trustees and disbursements
by them of the proceeds.

APPEALS from judgments of the Superior Court of San
Francisco, and also from orders granting new trials. Charles
Monroe, Judge.

The facts are stated in the opinion of the court.

H. M. Anthony, for Appellants.

Charles F. Hanlon, for Respondents.

Edward Lande, *Amicus Curiae.*

HENSHAW, J.—Plaintiff brought her action against de-
fendants as trustees, alleging that the trustees, without right,
had refused to pay her moneys due her and in their posses-
sion as trustees, and demanded judgment accordingly. She
recovered and the trustees appealed. They moved for a new
trial, which was granted, and from the order so doing plain-
tiff has appealed. These cross-appeals may with advantage
be considered together.

Four brothers Huff owned as tenants in common land in
the city of Los Angeles and land in the city and county of
San Francisco. They were in debt to numbers of persons.
While some of these persons were the creditors of all, others
were creditors of individual brothers. They entered into a
trust agreement, followed by four separate trust deeds, which
trust deeds, saving for the list of creditors and the amounts
due these creditors, were identical. Each trust deed set forth
a schedule list of the creditors of the brother executing it,
with declared priority of the liens of these creditors upon
one or another, and in certain instances on both, of the real
properties above mentioned. The trustees named were to
manage the trust properties, and in the event of default to
sell the properties, divide the moneys secured from the sales

to the payment of charges arising under the trust, and to the extinguishment of the creditors' obligations, with balance over to the trustors. The trustees were enjoined to sell either the Los Angeles or the San Francisco properties, or both, if necessary, but to sell the Los Angeles property first. Out of the gross proceeds of each sale was to be paid charges and disbursements pertaining to the property sold. The net remainder was to be divided into four portions and "out of the four respective residues the four sets of trustees shall pay off each its set of lien creditors parties to its trust deeds respectively and in the order and rank provided for in said trust deeds respectively." The creditors' indebtednesses were evidenced respectively by promissory notes made to them, and it was further provided that the promissory notes, principal and interest, remaining unpaid at the time of sale should be paid, "but in order as they rank as liens and charges as set forth in said notes and as provided for herein."

The list of creditors with the designated priority of their liens in the Claude Huff trust, known as Trust No. 3, and the Bion Huff trust, known as Trust No. 4, may thus be tabulated:

### CLAUDE HUFF.

| Notes to | To Secure | Lien on Los Angeles Property | Lien on San Francisco Property |
|---|---|---|---|
| Henry Meyer | $ 8,155.00 | 1st lien | 1st lien |
| Chas. F. Hanlon | 11,082.56 | 2nd lien | 2nd lien |
| Chas. Adler | 1,125.00 | 3rd lien | none |
| Sarah Harrington | 1,375.90 | 4th lien | none |
| Chas. F. Hanlon | 15,090.00 | 5th lien | 3rd lien |
| E. R. Marriott | 2,408.08 | 6th lien | 4th lien |
| A. A. Barber | 300.00 | 7th lien | 5th lien |
| George C. Conde | 1,100.00 | 8th lien | 6th lien |

### BION HUFF.

| Notes to | To Secure | Lien on Los Angeles Property | Lien on San Francisco Property |
|---|---|---|---|
| Henry Meyer | $ 8,155.00 | 1st lien | 1st lien |
| Chas. F. Hanlon | 10,251.87 | 2nd lien | 2nd lien |
| Charles Adler | 1,125.00 | 3rd lien | none |
| Sarah Harrington | 1,375.00 | 4th lien | none |
| Archibald Reid | 1,425.80 | 5th lien | 3rd lien |
| Chas. F. Hanlon | 13,625.95 | 6th lien | 4th lien |

Time came when the trustees under their trust were obliged to sell the real estate. In conformity with the mandate of

the trust they first sold the Los Angeles property and devoted the net proceeds of the sale to the extinguishment of the trustors' indebtedness according to the indicated priority. Thereafter they sold the San Francisco property and made like disposition of the proceeds arising therefrom. This the trustees contend they were fully authorized to do under the terms and meaning of the trust agreement and the trust deeds, and herein it is said that the very purpose of the trust mandate that the Los Angeles property should be sold first was that this precise thing should be done; that no one could foresce at the time when the sale took place what would be the extent of the trustors' liabilities, and those liabilities might be wholly extinguished by the sale of one piece of property. Therefore the Los Angeles property was designated as the property first to be sold, and if the proceeds of that sale when applied to the extinguishment of the indebtedness was not sufficient to accomplish this end, a sale of the San Francisco property was to follow. This was the method they adopted, and it is the method of which plaintiff complains. In her complaint she urges and argues that she was entitled in the case of each of these trusts to a marshaling of the assets and to ratable and proportionate distribution among the lien claimants of the joint funds arising from both sales. Thus, to illustrate, assuming that under Trust No. 4 the net proceeds of the Los Angeles property and the net proceeds of the San Francisco property amounted each to fourteen thousand dollars, there would be in the hands of the trustees twenty-eight thousand dollars; from each of these fourteen thousand dollar funds should be taken one-half of $8,155, the amount of the Henry Meyer first lien and one-half of $10,251.87, the amount of the Hanlon second lien; that this method would leave in the Los Angeles fund some four thousand dollars which could and should have been devoted to the extinguishment of the Adler debt amounting to $1,125, and, next, to plaintiff's own debt, amounting to $1,375. The method in fact adopted by the trustees was to pay the Meyer first lien in full out of the sale of the Los Angeles property and the Hanlon second lien in so far as the funds were adequate for that purpose. Thus nothing was left to satisfy the Harrington lien, and funds were left, by the method which the trustees adopted, to serve in part extinguishment at least

of the Reid third lien on the San Francisco property and the Hanlon fourth lien thereon.

Upon trial the court refused to admit in evidence the trust agreement upon the ground that the deeds of trust were complete and spoke for themselves. It found that the method of disbursement adopted by the trustees was arbitrary and in disregard of the just rights of the plaintiff. It found ''as a fact and conclusion of law that under the terms of the said trust deeds it was provided that said trustees should pay the liens of Henry Meyer and Charles F. Hanlon out of the joint sums of money derived from the sales of both parcels of real estate and that the proceeds from each parcel should contribute toward the payment of each of said liens of said Meyer and Hanlon, being the first and second liens, in the same proportion as the said two funds bore to each other in amount.'' The court found that Hanlon was not a necessary party in this marshaling of assets, notwithstanding the fact that by the method which the court proposed to adopt for the disposition of the trust funds, his rights would be injuriously affected. It recognized that it would affect Mr. Hanlon injuriously, but found that it could be done ''without impairing any rights of said Hanlon that should not be impaired.'' The judgment as above indicated followed these findings, necessarily to the detriment of Mr. Hanlon.

It is unnecessary to discuss in detail the matters urged for and against the soundness of the order of the court in granting the new trial, the error in refusing admission to the declaration of trust, in denying to Mr. Hanlon the right to be joined in the action as a party in interest, and other similar considerations. The judgment of the court rests wholly upon its interpretation which it declares to be one of mixed law and fact, that it became the duty of the trustees ''under the terms of said trust deed to prorate the proceeds from each parcel of land sold.'' Clearly, no such duty is imposed upon the trustees by the terms of the trust. The terms of the trust fairly contemplate that the Los Angeles property may be sold alone if its sale will extinguish the trustors' indebtedness, and in terms declares that the proceeds of the sale shall be used to extinguish the lien claims in order of their priorities. It can only be by what the trial court conceived to be the proper application of the equitable doctrine of marshaling of assets

that the court reached the determination which it gave, and which so far from being in accord with the language of the trust deed is, if anything, in violation of it. We may here take for convenient illustration the tabulated list of the Bion Huff lien claimants as above set forth. The lands to which these liens respectively attach are specifically declared, their priorities enumerated with particularity. The right to marshal is a mere equity which may never be invoked when its operation will accomplish inequity. In its simplest form it is, as set forth by Judge Story (Equity Jurisprudence, sec. 633) as follows: "If A has a mortgage upon two different estates for the same debt, and B has a mortgage upon one only of the estates for another debt, B has a right to throw A in the first instance, for satisfaction upon the security, which he, B, cannot touch, at least where it will not prejudice A's rights, or improperly control his remedies." (See, also, Pomeroy's Equity Jurisprudence, sec. 867; *Mack* v. *Shafer,* 135 Cal. 114, [67 Pac. 40].) But a lien claimant may invoke this equitable principle of marshaling assets only when it will benefit ·him without injuring others, and if this cannot be done 'then equity will but follow the law. This familiar principle has been codified in sections 2899 and 3433 of the Civil Code. Moreover, it is equally fundamental that equity will apply the doctrine only to conditions existing at the time when it is invoked. "It can only become a fixed right by taking proper steps to have it enforced, and until this is done it is subject ·to displacement and defeat by subsequently acquired liens upon the fund. This inchoate right or equity is not a lien, and is therefore subject to defeat at any time before it is attempted to be enforced." (*Richards* v. *Cowles,* 105 Iowa, 734, [75 N. W. 648].) In this case no demand was made upon the trustees. Equity's aid was not invoked until long after the sales and disbursements of the moneys by the trustees under the sales. But of more consequence still, an inspection of the table above given will disclose that the method of distribution insisted upon by Mrs. Harrington, though to her advantage, could not be adopted without corresponding injury to the third lien claim on the San Francisco property held by Archibald Reid for $1,245.80 and to the fourth lien claim of Charles F. Hanlon upon the same property for $13,625.95. Therefore, as equity could

not intervene for the advantage of one lien claimant without working proportionate injury to another, it must and will leave them where they have placed themselves under the law.

What is thus said of Trust 4 has, of course, identical application to Trust 3, and for the reasons given the judgment appealed from is reversed and the order granting a new trial is affirmed.

Melvin, J., and Lorigan, J., concurred.